UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HEATHER HILLIARD** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-171** |
| **JEFFERSON PARISH, ET AL.** | **SECTION: "H"(2)** |

### ORDER AND REASONS

Before the Court are Motions to Dismiss filed by Defendants John Young (R. Doc. 8), Richard Hart (R. Doc. 16) (collectively the "Individual Defendants"), and Jefferson Parish (R. Doc. 7). For the reason stated more fully below, the Motions are GRANTED IN PART. The following claims are DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted: (1) Plaintiff's claims under Title VII against the Individual Defendants; (2) Plaintiff's claims for punitive damages against Jefferson Parish for an alleged violation of Title VII; (3) Plaintiff's claims under 42 U.S.C. § 1983; (4) Plaintiff's claims against the Individual Defendants under the Louisiana

1

Employment Discrimination Law ("LEDL"), La. Rev. Stat. § 23:301 *et seq.*; and (5) Plaintiff's negligent retention claims.

**BACKGROUND**

This is an employment discrimination and sexual harassment action filed by Plaintiff Heather Hilliard against Jefferson Parish, Jefferson Parish President John Young ("Young"), and Jefferson Parish Deputy Chief Operating Officer Richard Hart ("Hart"). Plaintiff worked for Jefferson Parish as a senior administrative assistant from December 13, 2010, until May 24, 2012. During the course of her employment, Plaintiff alleges Hart harassed her by using "sexually offensive language and ma[king] vulgar comments." This harassment allegedly commenced in February 2011 and persisted for several months. Plaintiff complained of Hart's behavior to Jefferson Parish supervisors from March 2011 to December 2011. In June of that year, Young transferred some of Plaintiff's job responsibilities to Hart, thereby forcing her to work directly under Hart's supervision. The harassment continued.

Jefferson Parish eventually investigated Plaintiff's complaints. A report was issued on February 10, 2012, which allegedly concluded Hart violated Jefferson Parish policy by engaging in persistent acts of "gender harassment." Hart resigned two days later.

On March 1, 2012, Plaintiff received her first employment evaluation. The evaluation was deeply critical of her job performance. On March 24, 2012, Jefferson Parish terminated Plaintiff's

employment.

On July 20, 2012, Plaintiff filed a charge of discrimination against Jefferson Parish with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed the instant law suit on February 26, 2013. Despite alleging that she satisfied all prerequisites for her Title VII claim, it is undisputed that Plaintiff had not received a "right to sue" letter at the time she filed her complaint. In fact, Plaintiff did not receive the letter until December 11, 2013—several months after Defendants filed the instant Motions.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009). The Court need not, however, accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S. Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic

3

recitation of the elements of a cause of action'" will not suffice. *Iqbal*, 129 S. Ct. at 678 (quoting *Twombly*, 550 S. Ct. at 1955). Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

**LAW AND ANALYSIS**

Plaintiff has asserted federal claims under Title VII, the Equal Pay Act ("EPA"),[1] and Section 1983. She also asserts state law claims for employment discrimination under the LEDL, and negligent retention. The Court addresses each claim separately.

I.  Title VII Claims

Defendants argue Plaintiff's Title VII claims are premature, because she had not received a right to sue letter at the time she filed suit. Should the Court disagree, Defendants offers two arguments in the alternative: (1) the Individual Defendants argue that individual employees are not subject to liability under Title VII; (2) Jefferson Parish argues that a Plaintiff may not recover

---

[1] 29 U.S.C. 206(d).

punitive damages from a political subdivision. The Court first addresses the prematurity argument.

A. *Whether Plaintiff's Title VII Claims are Premature*

Defendants contend Plaintiff's Title VII claims are subject to dismissal for failure to exhaust administrative remedies. Plaintiff counters that any procedural default was cured by the issuance of the December 11, 2013, right to sue letter.[2] For the following reasons, the Court agrees with Plaintiff.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). A plaintiff meets this requirement if he (1) files a timely charge with the EEOC, and (2) receives a right to sue letter. *Id.* The question before the Court is whether the exhaustion requirement in Title VII is merely a condition precedent subject to equitable modification, or whether it is jurisdictional, the failure to comply with which mandates dismissal. The answer lies somewhere in the thicket of a particularly thorny intra-circuit split. *Compare Pinkard v. Pullman–Standard, A Div. of Pullman, Inc.*, 678 F.2d 1211, 1215 (5th Cir. 1982) ("We hold that receipt of a right-to-sue letter is a condition precedent to a Title VII claim rather than a jurisdictional prerequisite."), *and Julian v. City of Hous., Tex.*, 314 F.3d 721, 725 n.3 (2002) ("Our Title VII cases hold that 'receipt of a right-to-sue letter is not jurisdictional but a condition

---

[2] "The Court may take judicial notice of EEOC documents as a matter of public record when deciding a Rule 12(b)(6) motion." *Wilson v. Lockheed Martin Corp.*, No. 03–2276, 2003 WL 22384933, at *2 (E.D. La. Oct. 15, 2003).

precedent subject to equitable modification.'") (quoting *McKee v. McDonnell Douglas Technical Servs. Co., Inc.*, 705 F.2d 776, 777 n.2 (5th Cir. 1983)), *and Taylor*, 296 F.3d at 379 ("[The] filing of an EEOC charge is not a jurisdictional prerequisite."), *with Tolbert v. U.S.*, 916 F.2d 245, 247 (5th Cir. 1990) ("[I]t is the well-settled law of this circuit that each [Title VII] requirement is a prerequisite to federal subject matter jurisdiction."), *and Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998) ("If the claimant fails to comply with either of the[] [Title VII] requirements then the court is deprived of jurisdiction over the case."), *and Filer v. Donley*, 690 F.3d 643, 648 (5th Cir. 2012) ("The court correctly held that it lacked jurisdiction to consider the other [Title VII] allegations as to which [the plaintiff] failed to exhaust his administrative remedies."); *see also Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006) (acknowledging the split in authority).

Because neither the Supreme Court nor the Fifth Circuit sitting *en banc* has addressed the effect of a Title VII plaintiff's failure to exhaust administrative remedies, *see Pacheco*, 448 F.3d at 788 n.7, this Court is bound by the earliest panel decision on point. *See U.S. v. Holy Land Found. for Relief & Dev.*, 445 F.3d 771, 789 (5th Cir. 2006). That decision was rendered in 1982 by a divided panel in *Pinkard*.

Two of the plaintiffs in *Pinkard* brought suit a mere four days after filing charges with the EEOC. 678 F.2d at 1215. Neither plaintiff had received a right to sue letter from the EEOC at the time suit was filed. *Id.* The EEOC issued the letters approximately six months later. *Id.* The district court nonetheless dismissed the Title VII claims for want of subject matter jurisdiction, because the

plaintiffs had failed to exhaust their administrative remedies before filing suit. *Id.*

On appeal, the *Pinkard* Court addressed the precise issue before the Court today: "whether the receipt of a right-to-sue letter is a jurisdictional prerequisite, which if not satisfied deprives federal courts of subject matter jurisdiction or whether the requirement is a condition precedent subject to equitable modification." *Id.* at 216. After an extensive review of the relevant jurisprudence, the court held that the receipt of a right-to-sue letter is a condition precedent, "which on proper occasion may be equitably modified." *Id.* Applying this general principle to the facts before it, the court held that "receipt of a right-to-sue letter subsequent to the commencement of a Title VII action, but while the action remains pending" cures the initial failure to exhaust administrative remedies. *Id.* at 1218–19. Accordingly, the district court's dismissal of the Title VII claims was reversed. *Id.* at 1219.

Given the similarity between the facts in *Pinkard* and those in the instant matter, the Court is bound by *Pinkard* unless, of course, there is an earlier panel decision on point. Most district courts to acknowledge the intra-circuit split have found that *Pinkard* is the first panel decision to address the issue. *See, e.g.*, *Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 977 (N.D. Tex. 2011); *Barton v. Am. Eurocopter Corp.*, No 4:02CV516–Y, 2002 WL 32487882, at *2 (N.D. Tex. Oct. 10, 2002). Nonetheless, one could argue that the Fifth Circuit's decision in *Porter v. Adams*—issued one year prior to *Pinkard*—controls. In *Porter*, the court described the exhaustion requirement as "an

7

*absolute* prerequisite to suit under [Title VII]."³  639 F.2d at 276 (emphasis added).  In fact, at least one Fifth Circuit panel has cited this excerpt for the proposition that the exhaustion requirement is a jurisdictional prerequisite.  *See Tolbert*, 916 F.2d at 247–48; *cf. Pacheco*, 448 F.3d at 788 n.7 (citing *Porter* when describing intra-circuit split).  As explained more fully below, however, *Porter*'s description of the exhaustion requirement as an "absolute prerequisite" to suit is mere *dictum*, which does not bind future panels.

The plaintiff in *Porter* filed a complaint of race discrimination against the United States Coast Guard ("USCG") with the EEOC .  639 F.2d at 274. Because of actions allegedly taken by the USCG in response to the filing of the complaint, the plaintiff filed a second document with the EEOC—a "charge of reprisal."  *Id.*  The plaintiff withdrew her complaint following administrative settlement, but the charge of reprisal remained pending.  *Id.* at 274–75.  The USCG's Office of Civil Rights determined that the charge had merit and recommended remedial action.  *Id.* at 275.  After filing two additional complaints of discrimination with the EEOC, the plaintiff brought a civil action, which the district court eventually dismissed.  *Id.*

The plaintiff's appeal challenged only the district court's dismissal of those claims contained

---

³ The argument would focus on the court's use of the word "absolute" when describing the exhaustion requirement.  If a requirement is absolute, it is not subject to modification.  A condition precedent, on the other hand, *is* subject to equitable modification.  *See Pacheco*, 448 F.3d at 788 n.7.  Therefore, if the exhaustion requirement is absolute, it cannot be considered a mere condition precedent to filing suit.  And if it is not a condition precedent, it follows that the exhaustion requirement is jurisdictional.

8

in her charge of reprisal. *Id.* at 276. Interpreting a previous version of Title VII, the court described the requirement that a plaintiff exhaust administrative remedies as "an absolute prerequisite to suit under [Title VII]." *Id.* As part of this requirement, the court explained that a plaintiff must file a complaint of discrimination with the EEOC. *Id.* Thus, the issue on appeal was whether the filing of a charge of reprisal was tantamount to filing a complaint of discrimination, thereby "providing a path to judicial review." *Id.* After thoroughly examining the regulations that govern the filing of reprisal actions, the court answered this question in the negative, and affirmed the district court's dismissal of the civil complaint. *See id.* at 276–77.

As the foregoing makes clear, the *Porter* Court did not confront the issue before the court in *Pinkard*, namely, whether the exhaustion requirement is a jurisdictional prerequisite or merely a condition precedent to filing suit. Nor would it have been necessary for the *Porter* Court to do so: the sole issue on appeal was whether the filing of a charge of reprisal satisfied the requirement that a Title VII plaintiff file a complaint with the EEOC before bringing a civil action. For this reason, to the extent the court's description of the exhaustion requirement as "absolute" may be interpreted as finding that the requirement is jurisdictional, it should be considered *dictum*. *See Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000) ("A statement should be considered *dictum* when it could have been deleted without seriously impairing the analytical foundations of the holding-[and], being peripheral, may not have received the full and careful consideration of the court that uttered it.") (alterations in original) (internal quotation marks omitted); *In re Hearn*, 376

9

F.3d 447, 453–54 (5th Cir. 2004) ("That which is 'obiter dictum' is stated only 'by the way' to the holding of a case and does not constitute an essential or integral part of the legal reasoning behind a decision."). As such, the *Pinkard* Court was free to disregard it. *See Gochicoa*, 238 F.3d at 286 n.11 ("Of course, one panel's dictum cannot bind future panels."); *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004); *Soc'y of Separationists, Inc. v. Herman*, 939 F.3d 1207, 1211 (5th Cir. 1991).

      B. *Whether Plaintiff's Title VII Claims are Legally Cognizable*

Having determined that Plaintiff's Title VII claims may not be dismissed on procedural grounds, the Court now examines Defendants' alternative arguments for dismissal. The law is clear in the Fifth Circuit that there is no individual liability under Title VII. *See Ackel v. Nat'l Commc'ns., Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."); *Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002) ("This circuit has held that there is no individual liability for employees under Title VII."). The law is equally clear that a Title VII plaintiff cannot recover punitive damages from political subdivisions such as Jefferson Parish. *See* 42 U.S.C. § 1981a(b); *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 465–66 (5th Cir. 2001) ("[Title VII] precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions."). Accordingly, Plaintiff's Title VII claims against the Individual Defendants and Plaintiff's claim for punitive damages against Jefferson Parish stemming from any alleged violation of Title VII are dismissed with prejudice.

II.     Section 1983 Claims

According to her complaint, Plaintiff's Section 1983 claims are based on "the deprivation of her rights under the laws of the United States, in particular Title VII . . . and the Equal Pay Act." For the reasons explained below, Plaintiff cannot premise a Section 1983 claim on the violation of Title VII or the EPA.  Accordingly, those claims are dismissed with prejudice.

It is well established that Section 1983 does not create any substantive rights; it "merely provides a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (internal quotation marks omitted).  Thus, in order to state a claim under Section 1983, the plaintiff must allege the infringement of a federal right created by another federal law or the constitution.  *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Irby v. Sullivan*, 737 F.2d 1418, 1427 (5th Cir. 1984).  But not all violations of federal law are actionable. Because Section 1983 is a statutory remedy, Congress may repeal it or replace it with an alternative remedy.  *Smith v. Robinson*, 468 U.S. 992, 1012 (1984).  Thus, whether the violation of a federal law may be vindicated through Section 1983 is a question of Congressional intent.  *See id.*  When Congressional intent is not express, it may be inferred from the creation of "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."  *Blessing*, 520 U.S. at 341; *Irby*, 737 F.2d at 1428.

The Fifth Circuit has clearly held that Title VII cannot serve as the basis for a civil rights action under Section 1983.  *See Irby*, 737 F.2d at 1429; *Grady v. El Paso Cmty. Coll.*, 979 F.2d 1111,

11

1113 (5th Cir. 1992). The Fifth Circuit has not yet addressed, however, whether a violation of the EPA is actionable under Section 1983. Because the EPA clearly creates federal rights—namely, the right to be free from wage discrimination on the basis of sex—the issue before the Court is whether Congress intended to foreclose enforcement of that right through other remedial schemes, such as Section 1983.

The Equal Pay Act is part of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009). In *Kendall v. City of Chesapeake, Virginia*, the United States Court of Appeals for the Fourth Circuit squarely held that a plaintiff may not enforce FLSA rights through Section 1983. 174 F.3d 437, 439 (4th Cir. 1999). The court found the remedial scheme in the FLSA sufficiently comprehensive as to evince Congressional intent to foreclose actions under Section 1983. *Id.* at 442–43. Perhaps the strongest indicia of that intent is the authorization of a private right of action to enforce FLSA rights. *Id*. at 443 ("The Supreme Court has repeatedly emphasized that the availability of such a remedy strongly suggests a Congressional intent to preclude resort to § 1983."); *see also* 29 U.S.C. § 216(b). Moreover, the FLSA authorizes the Secretary of State to seek compensatory and injunctive relief. 29 U.S.C. §§ 216(b); 217. Once the Secretary exercises that authority, an individual's private right of action is extinguished. 29 U.S.C. § 216(b). "If parallel § 1983 actions were allowed, this provision would become 'superfluous.'" *Kendall*, 174 F.3d at 443 (quoting *Smith*, 468 U.S. at 1011).

Given the foregoing, the Court holds that a plaintiff may not utilize Section 1983 to redress violations of the FLSA.  This holding is consistent with that reached by other district courts in the Fifth Circuit.  *See, e.g.*, *Suter v. Univ. of Tex. at San Antonio*, 859 F. Supp. 2d 851, 855 (W.D. Tex. 2012) ("The Equal Pay Act provides an adequate remedy for the Plaintiff's alleged violations, to the exclusion of a redundant claim under § 1983."); *Henley v. Simpson*, No. 12CV590 DPJ–FKB, 2012 WL 3017812, at *2 (S.D. Miss. July 23, 2012) ("[C]ourts have consistently held that the FLSA provides an exclusive remedy for overtime violations [to the exclusion of Section 1983]."), *vacated on other grounds by Henley v. Simpson*, 527 F. App'x 303 (5th Cir. 2013); *Barfield v. Madison Cnty., Miss.*, 984 F. Supp. 491, 509 (S.D. Miss. 1997) ("Because the FLSA provides an exclusive remedy for the violation of its terms, the Plaintiffs' claims pursuant to § 1983 must be dismissed."). Accordingly, Plaintiff's Section 1983 claim for violation of the EPA is dismissed with prejudice.

In her opposition memoranda and in oral argument, Plaintiff argued that her complaint asserts Section 1983 claims for violations of federal rights *other than* those created by Title VII and the EPA.  In support of this argument, Plaintiff cites the following sentence from her complaint: "defendants have subjected plaintiff to the deprivation of her rights under the *laws* of the United States, *in particular* Title VII . . . and the Equal Pay Act, and are accordingly liable . . . under [Section 1983]."  The argument appears to run thusly: by using the word "laws" in the plural, Plaintiff did not limit her Section 1983 claims solely to violations of Title VII and the EPA.  This argument is easily dismissed.

In order to state a claim under Section 1983, the pleader "must identify the specific . . . right allegedly infringed." *See Albright*, 510 U.S. at 811 (plurality opinion).  The only specific rights Plaintiff identifies are those created by Title VII and EPA.  Thus, under the clear standard enunciated in *Albright*, any other alleged Section 1983 violations have not been pleaded with the requisite specificity.

Furthermore, Plaintiff's alternative Section 1983 claims fail for a more fundamental reason.  Rule 8 governs the pleading requirements in federal court.  The primary purpose of these requirements is to "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks omitted).  A civil rights complaint that generally alleges a violation of the entire panoply of federal rights does violence to this principle.  Indeed, such generic pleadings would leave defendants guessing as to which claims it must defend against. Moreover, when ruling on a motion to dismiss, the reviewing court would be required to scan the complaint for all potential well-pleaded violations of federal rights.  While this practice may be required when a plaintiff is proceeding *pro se*,[4] it is certainly unnecessary and unduly burdensome when the plaintiff is represented by counsel.  Accordingly, the Court finds that Plaintiff has only asserted a Section 1983 claim for violation of Title VII and the EPA.  Should Plaintiff wish to assert additional claims under Section

---

[4] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

1983, she must seek leave to amend her complaint accordingly.

III.     EPA Claims

The Individual Defendants contend Plaintiff's EPA claim fails as a matter of law. Specifically, the Individual Defendants contend they are not statutory employers. The Court cannot make this determination on the pleadings. Accordingly, Plaintiff's EPA claim against the Individual Defendants shall remain pending.

The EPA prohibits wage discrimination on the basis of race. *See* 29 U.S.C. § 206(d). In order establish a *prima facie* case, a plaintiff must demonstrate, *inter alia*, that "her employer is subject to the [EPA]." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). Thus, the *sine qua non* of an EPA claim—or any other claim under the FLSA— is the existence of an employer-employee relationship. *See Garman v. Helix Energy Solutions Grp.*, No. 11–2341, 2012 WL 458822, at *2 (E.D. La. Feb. 13, 2012) (collecting cases).

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The Supreme Court has termed the [EPA's] employer definition 'expansive' and has held that 'managerial responsibilities' and 'substantial control of the terms and conditions of the [employer's] work' create statutory employer status." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (quoting *Falk v.*

15

*Brennan*, 414 U.S. 190, 195 (1973)).[5] Whether an individual is an "employer" under the FLSA is a question of fact. *Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 195 (5th Cir. 1983). Individuals who meet the statutory definition of employer are jointly and severally liable for a FLSA plaintiff's damages. *Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220, 226 (5th Cir. 1991).

Accepting all well-pleaded allegations as true, the Court finds that dismissal of the EPA claims against the Individual Defendants is not appropriate at this time. Moreover, the question of whether an individual is a statutory employer under the FLSA is primarily one of fact, and is thus ill-suited for resolution on the pleadings. *See Murungi v. Touro Infirmary*, No. 11–1823, 2012 WL 2903341, at *4 (E.D. La. July 16, 2012) (refusing to grant motion to dismiss and recognizing that question of employer status is more properly resolved on summary judgment); *Hawthorne v. Reilly Foods Co.*, No. 01–1405, 2001 WL 902596, at *2 (E.D. La. Aug. 9, 2001) (same). In denying the motions to dismiss, the Court is mindful that the FLSA "is to be construed liberally because by it Congress intended to protect the country's workers." *Grim Hotel Co.*, 747 F.3d at 971.

IV.  LEDL Claims

The Individual Defendants move this Court to dismiss Plaintiff's LEDL claims against them, because the complaint does not allege that either Defendant meets the statutory definition of

---

[5] To help flesh out the statutory definition of employer, the Fifth Circuit developed the "economic reality" test. *Gray v. Power*, 673 F.3d 352, 355 (5th Cir. 2012). Under this test, the court considers a number of factors, including whether the putative employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*

16

"employer." The Court agrees. Accordingly, Plaintiff's LEDL claims against the Individual Defendants are dismissed.

The LEDL authorizes civil suits against an "employer, employment agency, or labor organization." La. Rev. Stat. § 23:303A. In order for an individual to meet the statutory definition of "employer," he must: (1) "receiv[e] services from an employee and, in return, giv[e] compensation of any kind to an employee," and (2) "employ[] twenty or more employees within [Louisiana] for each working day in each of twenty or more calendar weeks." La. Rev. Stat. § 23:302(2).

Plaintiff's complaint contains no allegations or basis for finding that the Individual Defendants meet this narrow definition of "employer." This omission is hardly surprising, given that Louisiana courts have consistently held that neither co-employees nor supervisors are subject to individual liability under the LEDL. *See Aronzon v. Sw. Airlines*, No. 03–394, 2004 WL 57079, at *5 (E.D. La. Jan. 9, 2004) (collecting cases). Thus, Plaintiff's LEDL claims against the Individual Defendants are dismissed with prejudice.

V.      Negligent Retention Claim

Defendants argue Plaintiff's negligent retention claim is barred by the exclusivity provision of the Louisiana Workers' Compensation Law ("LWCL"), La. Rev. Stat. § 23:1020.1 *et seq.* The Court agrees. Accordingly, Plaintiff's negligent retention claim is dismissed with prejudice.

The LWCL specifically provides that an employee's rights under the statute are exclusive of

17

all other rights, remedies, and claims for damages. La. Rev. Stat. § 23:1032A(1)(a). Citing this provision, Louisiana courts routinely dismiss negligence claims against employers arising in the course and scope of employment. *See, e.g.*, *Pearson v. IHOP*, No. 09-3071, 2010 WL 971798, at **3–4 (E.D. La. Mar. 10, 2010) (dismissing negligent retention claim); *Oramous v. Military Dept.*, No. 05–3677, 2007 WL 1796194, at *9 (E.D. La. June 18, 2007) (dismissing claims for negligent infliction of emotional distress and negligent failure to supervise); *Bertaut v. Folger Coffee Co.*, No. 06–2437, 2006 WL 2513715, at *3 (E.D. La. Aug. 29, 2006) (dismissing claims for negligent infliction of emotional distress, failure to train, and failure to supervise); *Tumbs v. Wemco., Inc.*, 714 So. 2d 761, 763 (La. Ct. App. 4th Cir. 1998) (affirming dismissal of employee's negligence claims based on LWCL's exclusivity provision); *see also Bourgeois v. Curry*, 921 So. 2d 1001, 1010 (La. Ct. App. 4th Cir. 2005) ("[A]n employee's claims for injuries arising in the workplace that sound in negligence are precluded by the [LWCL]."). Plaintiff's negligent retention claim is clearly barred by the LCWL, and therefore must be dismissed with prejudice.

**CONCLUSION**

Plaintiff asserted a litany of claims in her complaint, most of which fail as a matter of law. Accordingly, and for the reasons previously stated, the instant Motions are GRANTED IN PART. The only claims remaining for trial are: (1) the Title VII claims against Jefferson Parish, (2) the EPA claims against all Defendants, and (3) the LEDL claims against Jefferson Parish.

New Orleans, Louisiana, this 8th day of January, 2014.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**